Ted Poretz
ZUKERMAN GORE BRANDEIS
 & CROSSMAN, LLP
Eleven Times Square
New York, New York 10036
(212) 223-6700
tporetz@zukermangore.com

*Attorneys for Plaintiff Overseas*
*Private Investment Corporation*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OVERSEAS PRIVATE INVESTMENT CORPORATION, <br><br> Plaintiff, <br><br> -against- <br><br> REHA CELIKAY and GULNUR CELIKAY, <br><br> Defendants. | Case No. 17 cv _____ (   )(   ) <br><br><br> **COMPLAINT** |

Plaintiff **OVERSEAS PRIVATE INVESTMENT CORPORATION**, by and through

its attorneys Zukerman Gore Brandeis & Crossman, LLP as and for its **COMPLAINT** against

Defendants **REHA CELIKAY** and **GULNAR CELIKAY**, hereby sets forth the following:

## THE PARTIES

1.      Plaintiff Overseas Private Investment Corporation ("OPIC") is an agency of the

United States government, with its principal offices located at 1100 New York Avenue, N.W.,

Washington, D.C. OPIC is the federal government's development finance agency. As part of its

mission, OPIC offers loan financing, among other things, to United States investors for specified

approved projects in the developing world.

2.      Defendant Reha Celikay ("Reha") is a natural person, and a citizen of the State of

New York, residing at 7 Franklin Place, Massapequa, New York 11758.

3.      Defendant Gulnar Celikay ("Gulnar") is a natural person, and a citizen of the State of New York, residing at 7 Franklin Place, Massapequa, New York 11758.   Gulnar and Reha are a married couple.

## JURISIDCTION AND VENUE

4.      Jurisdiction and venue are properly set before this Court. OPIC is an agency of the United States government. The amount in controversy, without interest, attorneys' fees and costs, exceeds seventy-five thousand dollars ($75,000.00). Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1345.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b). In the Guarantees that are the subject of this action, each of Reha and Gulnar expressly and unconditionally consented to the laying of venue in this judicial district. Each of the Guaranties are governed by the laws of the State of New York.

## THE FACTS

*The Loan Agreements*

6.      This action arises out of various loan agreements between Summit Associates, Ltd, a corporation organized and existing under the laws of New York ("Summit US"), Summit Associates, Ltd., a corporation organized and existing under the laws of the Islamic Republic of Afghanistan ("Summit Afghanistan") (each a "Borrower;" collectively, the "Borrowers") and OPIC as the lender. Upon information and belief, Reha controls both Summit US and Summit Afghanistan in all material respects.

7.      In June, 2008, Borrowers and OPIC entered into a loan agreement (the "Original Loan Agreement"). Pursuant to the Original Loan Agreement, OPIC extended to Borrowers a credit facility in the principal amount of up to four million dollars $4,000,000 (the "Tranche 1 Loan"). The Original Loan Agreement was intended to fund Borrowers' expansion of a business to engage in the sale of chicken parts in Afghanistan.

8.    In September, 2005, OPIC entered into a loan agreement with Mountain Pastures Holdings, LLC ("MPH") to provide a loan to MPH in the aggregate principal amount of five million dollars ($5,000,000) (the "MPH Loan Agreement"). The MPH Loan Agreement was intended to provide funds for a dairy project in Afghanistan.

9.    In December, 2008, MPH defaulted under MPH Loan Agreement, pursuant to which default, the owners of MPH conveyed their membership interests in MPH to OPIC.

10.    In December, 2008, Summit US entered into a sale and purchase agreement with OPIC whereby Summit US acquired from OPIC all of its outstanding membership interest in MPH in consideration of Summit US's assumption of three million dollars ($3,000,000) in MPH's unpaid and outstanding debt to OPIC (the "Tranche 2 Loan").

11.    In June, 2010, Borrowers and OPIC as lender entered into another loan agreement (the "Ultimate Loan Agreement"). Pursuant to the Ultimate Loan Agreement, OPIC extended to Borrowers a new credit facility in the principal amount of up to six million dollars ($6,000,000) (the "Tranche 3 Loan"). The Ultimate Loan Agreement was intended, among other things, to fund the Borrowers' expansion of the dairy project purchased from OPIC by Summit US pursuant to the Tranche 2 Loan.  The Ultimate Loan Agreement amends and restates the Original Loan Agreement and the MPH Loan Agreement.

12.    Under the Tranche 3 loan, Borrowers were entitled to two disbursements, the first in the amount of $4,000,000 and the second in the amount of $2,000,000, each disbursement to be evidenced by a promissory note in agreed form, and with payment terms as set forth under the Ultimate Loan Agreement.

13.    As set forth in more detail below, each disbursement requested by the Borrowers under the Ultimate Loan Agreement was to be collateralized by the unconditional Guaranties (the "Guaranties," each a "Guaranty") of each of Reha and Gulnar (collectively, the "Guarantors"), among other things.

## THE GUARANTIES

14.     Section 4.02(a)(i)(C) of the Ultimate Loan Agreement provides that as a condition precedent to OPIC's obligation to make the first distribution of the Tranche 3 Loan, each of Reha and Gulnar was obligated to provide their unconditional personal Guaranty to all sums borrowed thereby.

15.     Reha and Gulnar each executed an identical Guaranty in favor of OPIC dated as of June 21, 2010.

16.     Under Section 1 of both Guaranties, each of Reha and Gulnar:

> [U]nconditionally and irrevocably guarantees, as primary obligor and not merely as a surety, the full and punctual payment when due, whether at stated maturity, by acceleration or otherwise, of all obligations of the Borrowers now or hereafter existing under the Loan Documents, including without limitation, the following (the "Obligations"): (i) all principal and accrued interest due and payable under the Loan Documents; (ii) all fees, costs, expenses and similar amounts payable under the Loan Documents; and (iii) the due performance and compliance by the Borrowers with the terms and conditions of the Loan Documents.

17.     Under Section 2(a) of the Guaranties, each of Reha and Gulnar agreed that their obligations as Guarantors:

> [A]re independent of the Obligations, and a separate action or action may be brought and prosecuted against such Guarantor to enforce this Guaranty, irrespective of whether any action is brought against any Borrower or whether any Borrower is joint in any such action or actions. All rights of OPIC and the obligations of the Guarantor under this Guaranty shall be absolute, unconditional, irrevocable, and continuing …

18.     Each of the Guaranties was expressly to continue irrespective of "any right, claim, defense, waiver, surrender or compromise that such Guarantor may have or have made under or with respect to this Guaranty or otherwise."

19.     Under Section 2(b) of the Guarantees, each of Reha and Gulnar agreed:

> This Guaranty is a guaranty of payment and performance and not of collection. OPIC may require payment by the Guarantor and enforce the obligations of the Guarantor hereunder, without first being required to (i) make any demand of, or make any effort of collection of any obligation of, or enforce OPIC's claims against, the Borrowers, the Guarantor, or any other Person; (ii) resort to any security or other guaranty of the Loan or this Guaranty; or (iii) take any other action.

20.    Under Section 3 of the Guaranties, each of Reha and Gulnar:

[U]nconditionally waives; (a) presentment, demand, set-off, diligence, filing of claims with a court in the event of a bankruptcy or insolvency of any Borrower or otherwise, and right to require a proceeding first against the Guarantor or any Borrower; (b) notice (including notice of a Default or Event of a Default), protest, notice of acceptance of this Guaranty, notice of collateral received or delivered, or notice of any other action taken in reliance hereon; (c) all demands and notices in connection with the deliver, acceptance, performance, default, or enforcement of any of the Obligations, all notices of the existence, creation, or incurring of any Indebtedness under the Loan Documents by the Borrowers, and all other demands and notices of any description; and (d) any requirement that OPIC protect, secure, perfect, or insure any Lien or any property subject thereto or exhaust any right or take any action against any Borrower, any other Person, or any collateral.

## FIRST THE BORROWERS AND THEN THE GUARANTORS DEFAULT

21.    Borrowers eventually sought and obtained disbursements pursuant to the Tranche 1 Loan in the amount of the full four million dollar ($4,000,000) facility, in addition to the three million dollar ($3,000,000) debt it assumed under the Tranche 2 Loan.  They also drew four million dollars of the six million dollar facility available under the Tranche 3 Loan, for a total principal unpaid balance of eleven million dollars ($11,000,000).

22.    Borrowers have failed and refused, among other things, (a) to pay principal and interest required under the Ultimate Loan Agreement when such payments were due (or at any other time), and (b) to comply with the information reporting requirements contained in the Ultimate Loan Agreement.

23.    Pursuant to Section 9.02 of the Ultimate Loan Agreement, by letter dated September 29, 2017, OPIC served upon the Borrowers a Notice of Default, Notice of Acceleration and Call on Guaranties ("the Notice"), which set forth that Borrowers were in default and as a result, all outstanding obligations of Borrowers immediately became due and owing. Accordingly, OPIC's Notice directed Borrowers to repay the principal sum of eleven million dollars ($11,000,000) plus accrued interest then to date of August 30, 2017, for a total immediately due and owing of thirteen million seven hundred seventy four thousand five

hundred and two dollars and fifty-seven cents ($13,774,502.57) (the "Accelerated Debt"). The Notice also called the Guarantees.

24.     As a result, each of the Guarantors became liable to OPIC, jointly and severally, in the amount of $13,774,502.57 plus accruing interest.

25.     Each of Reha and Gulnar have failed and refused to pay this sum, or any portion thereof.

26.     Accordingly, each of Reha and Gulnar is in breach of their respective Guaranties.

27.     OPIC has been damaged thereby.

**WHEREFORE**, plaintiff Overseas Private Investment Corporation respectfully demands judgment against defendants Reha Celikay and Gulnar Celikay, jointly and severally, in the amount of $13,774,502.57, plus interest at the statutory rate, taxable costs and disbursements, reasonable attorneys' fees and such other and further relief as the Court may seem just and proper.

Dated: New York, New York
        November 13, 2017

ZUKERMAN, GORE BRANDEIS
& CROSSMAN, LLP

By: _____
Ted Poretz
Eleven Times Square
New York, New York 10036
(212) 223-6700
*Attorneys for Plaintiff*
*Overseas Private Investment Corporation*